UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

NATIONWIDE GENERAL INSURANCE
COMPANY and
NATIONWIDE INSURANCE COMPANY
OF AMERICA,

        Plaintiffs,

v.                                    Civil Action No. 2:23-cv-00588

TEDDY D. BELCHER, JR., and
S.R.,

        Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>

        Pending are cross-motions for summary judgment. Defendant Teddy Belcher, Jr., filed his Motion for Summary Judgment (ECF No. 15) and Memorandum in Support (ECF No. 16) on October 24, 2023. Plaintiffs Nationwide General Insurance Company and Nationwide Insurance Company of America (sometimes "Nationwide," collectively) filed a response and cross-motion for summary judgment against Belcher and S.R. (ECF No. 17) on November 7, 2023. Belcher did not file a response or reply. S.R. filed an answer (ECF No. 14) on October 20, 2024, which was nearly identical to Belcher's answer, and has not otherwise participated in this action in any respect.

I. BACKGROUND

Nationwide commenced this action on August 31, 2023, against Belcher and S.R., seeking a declaratory judgment that it was not liable to defend or indemnify Belcher in <u>S.R. v. Michael Miller, West Virginia State Police, The Front Room, LLC a/k/a Pappy's Bar and Grille, West Virginia Department of Homeland Security f/k/a West Virginia Department of Military Affairs and Public Safety, T.J. Belcher, and Cody Baisden</u>, Civil Action No. 23-C-560 (the "underlying action"), currently pending before the Kanawha County Circuit Court. Compl., ECF No. 1.

The relevant allegations in the underlying complaint are as follows. On or about July 10, 2021, S.R. was drugged and abducted from The Front Room, a bar in Logan County, West Virginia, and subsequently raped by defendant Michael Miller, a West Virginia State Trooper. Compl. at ¶ 10, Civ. No. 23-C-560, Compl. Ex. A, ECF No. 1-1. After being drugged, while still in the bar, S.R. attempted to get help from a friend at the bar, but defendants Miller, Belcher, and Cody Baisden prevented her from doing so, obscured her from view, and took her out the back door of the bar. <u>Id.</u> at ¶ 12. These same defendants put S.R. into a vehicle, got into the vehicle themselves, and began driving. <u>Id.</u> at ¶ 13. Although the underlying complaint does not say who was driving the vehicle or who owned the vehicle,

Count II of the underlying complaint charges both Baisden and
Belcher with negligently utilizing and operating a vehicle.  Id.
at ¶ 34.  While in the vehicle, S.R. was sexually assaulted and
raped by Miller.  Id. at ¶ 13.  The vehicle stopped at another
local bar which defendants entered, leaving S.R. in the parking
lot and in need of medical attention.  Id.

Of the ten causes of action set forth in the
underlying complaint, the following four are asserted against
Belcher: Count II – Negligence; Count III – Violations of the
West Virginia Human Trafficking Statute; Count VIII – The tort
of outrage; and Count IX – Intentional infliction of emotional
distress.  Id. at ¶¶ 29–45, 87–105.  The complaint seeks
compensatory and punitive damages.  See id. at 20.

The negligence claim (Count II) asserted against
Miller, Basden, Belcher, the West Virginia State Police, and the
West Virginia Department of Homeland Security, alleges, inter
alia, that "Baisden and Belcher acted negligently . . . in
negligently utilizing and operating a vehicle, failing to
intervene and render aid, failing to contact law enforcement,
and failing to obtain medical care for Plaintiff."  Id. at ¶ 34.
Belcher is alleged to have acted "with actual malice toward
Plaintiff or a conscious, reckless and outrageous indifference
to the health, safety and welfare of Plaintiff."  Id. at ¶ 36.

The West Virginia Human Trafficking Statute claim (Count III) asserted against Miller, Baisden, Belcher, the West Virginia State Police, the West Virginia Department of Homeland Security, and The Front Room, alleges, inter alia, that Belcher "assisted Defendant Miller in drugging and abducting Plaintiff" and that his actions were "negligent, . . . malicious, . . . willful, wanton and/or undertaken with reckless disregard and/or reckless indifference to the rights and safety of Plaintiff." Id. at ¶¶ 40–41, 43.

The tort of outrage claim (Count VIII) asserted against Miller, Baisden, Belcher, and the West Virginia State Police, alleges, inter alia, that Belcher "caused Plaintiff's drink to be laced with drugs that would cause her to lose conscious[ness] and have no recollection" and that he "aided and assisted Defendant Miller in abducting Plaintiff from The Front Room, and allow[ed] Defendant Miller to brutally rape and sexually assault Plaintiff, providing no assistance and failing to get medical care for Plaintiff."  Id. at ¶¶ 88, 92.  It further asserts that Belcher's conduct was "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency," that he "acted intentionally, and his intent was to inflict emotional distress upon the Plaintiff," and "[a]dditionally, or in the alternative, [his] conduct was

reckless in light of the substantial certainty that emotional distress would result from [his] conduct." Id. at ¶¶ 93–95.

Finally, the intentional infliction of emotional distress claim (Count IX) asserted against all defendants, alleges, inter alia, that Belcher "acted with the intent to inflict emotional distress or acted recklessly when it was certain or substantially certain emotional distress would result from [his] conduct" and the actions "were willful, wanton, and/or undertaken with conscious, reckless and outrageous indifference to the health, safety, and welfare of Plaintiff." Id. at ¶¶ 101, 104.

At the time the alleged events giving rise to the underlying action occurred, Belcher was insured by two Nationwide insurance policies – a Homeowners Policy furnished by Nationwide General Insurance Company to Belcher for the period of February 1, 2021, to February 1, 2022 (No. 92 47 FR 028132), Compl. Ex. B, ECF No. 1-2, and an Auto Policy furnished by Nationwide Insurance Company of America to Belcher for the period of February 1, 2021, to August 1, 2021 (No. 9247V 022393), Compl. Ex. C, ECF No. 1-3.

After S.R. initiated the underlying action, Nationwide filed its two-count complaint, commencing the instant action. Compl., ECF No. 1.  Nationwide asserts two causes of action:

first, it seeks a declaration that Belcher's Nationwide Homeowners Policy does not afford liability coverage or medical payment coverage on behalf of Belcher for the allegations in the underlying action (Count I); and second, it seeks a declaration that the Nationwide Auto Policy does not afford coverage on behalf of Belcher for the allegations in the underlying action or, in the alternative, the Auto Policy does not provide coverage above the $25,000 minimum limit under the West Virginia Motor Vehicle Safety Responsibility Law, West Virginia Code section 17D-1-1 et seq. (Count II).  See Compl. ¶¶ 29–44.

Belcher, in turn, seeks a declaration that Nationwide has a duty to defend and indemnify him (1) under the Homeowner Policy for the allegations that he negligently failed to render aid, negligently failed to contact law enforcement, and negligently failed to obtain medical care (as was broadly alleged in the underlying complaint); (2) under the Auto Policy for the allegations that he negligently utilized and operated a vehicle; and (3) for the full contracted-for limit of $100,000 per person, which he says is the applicable coverage under the Auto Policy, "unless and until said coverage is implicated by the holding in Shamblin v. Nationwide Mut[ual] Ins[urance] Co[mpany], 396 S.E.2d 766 (W. Va. 1990)."  Belcher's Answer at 4.

S.R. submitted an answer (ECF No. 14) which is, for all practical purposes, identical to Belcher's.  S.R. has not otherwise participated in this action beyond the filing of that answer.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Courts at this stage do not resolve disputed facts, weigh evidence, or make determinations of credibility. See Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). "Material" facts are those necessary to establish the elements of a party's cause of action.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010).  A dispute of material facts is "genuine" if, in viewing the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party.  See Anderson, 477 U.S. at 248.  The moving party is entitled to summary judgment if the record, as a whole, could

not lead a trier of fact to find for the non-moving party.  See
Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

        "When faced with cross-motions for summary judgment,
the court must review each motion separately on its own merits
'to determine whether either of the parties deserves judgment as
a matter of law.'"  Rossignol v. Voorhaar, 316 F.3d 516, 523
(4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122
F.3d 58, 62 n. 4 (1st Cir. 1997)).


                        III. ANALYSIS

        Under West Virginia law "it is well recognized that
'[t]he interpretation of [a] contract, including the question of
whether the contract is ambiguous, is a legal determination . .
. .'"  Bruce McDonald Holding Co. v. Addington, Inc., 825 S.E.2d
779, 784 (W. Va. 2019) (alterations in original) (quoting Syl.
Pt. 2, Riffe v. Home Finders Assocs. Inc., 517 S.E.2d 313 (W.
Va. 1999)).  Where the facts are not in dispute, determination
of insurance coverage pursuant to an insurance contract is a
question of law to be determined by the court.  See Syl. Pt. 1,
Tennant v. Smallwood, 568 S.E.2d 10 (W. Va. 2002).  "'Where the
provisions of an insurance policy contract are clear and
unambiguous they are not subject to judicial construction or
interpretation, but full effect will be given to the plain

8

meaning intended.'"  Syl. Pt. 5, <u>Am. Nat'l Prop. & Cas. Co. v.</u>
<u>Clendenen</u>, 793 S.E.2d 899 (W. Va. 2016) (quoting Syl., <u>Keffner</u>
<u>v. Prudential Ins. Co.</u>, 172 S.E.2d 714 (W. Va. 1970)); <u>see</u> <u>also</u>
Syl. Pt. 1, <u>Mitchell v. Fed. Kemper Ins. Co.</u>, 514 S.E.2d 393 (W.
Va. 1998) (quoting Syl. Pt. 1, <u>Tynes v. Supreme Life Ins. Co. of</u>
<u>Am.</u>, 209 S.E.2d 567 (W. Va. 1974)) ("'Where provisions in an
insurance policy are plain and unambiguous and where such
provisions are not contrary to a statute, regulation, or public
policy, the provisions will be applied and not construed.'");
Syl. Pt. 1, <u>W. Va. Fire & Cas. Co. v. Stanley</u>, 602 S.E.2d 483
(W. Va. 2004) (quoting Syl. Pt. 1, <u>Soliva v. Shand, Morahan &</u>
<u>Co.</u>, 345 S.E.2d 33 (W. Va. 1986)).

     "'Whenever the language of an insurance policy
provision is reasonably susceptible of two different meanings or
is of such doubtful meaning that reasonable minds might be
uncertain or disagree as to its meaning, it is ambiguous.'"
Syl. Pt. 7, <u>Clendenen</u>, 793 S.E.2d 899 (quoting Syl. Pt. 1, <u>Prete</u>
<u>v. Merchs. Prop. Ins. Co.</u>, 223 S.E.2d 441 (W. Va. 1976).  "'It
is well settled law in West Virginia that ambiguous terms in
insurance contracts are to be strictly construed against the
insurance company and in favor of the insured.'"  Syl. Pt. 6,
<u>id.</u> (quoting Syl. Pt. 4, <u>Nat'l Mut. Ins. Co. v. McMahon & Sons</u>,
356 S.E.2d 488 (W. Va. 1987), <u>overruled on other grounds by</u>

<u>Parsons v. Halliburton Energy Servs., Inc.</u>, 785 S.E.2d 844 (W. Va. 2016)).

The parties agree that there is no material issue of fact in dispute.  Nationwide seeks a declaratory judgment that the Homeowners Policy does not afford Belcher coverage in the underlying action because the underlying complaint does not allege an "occurrence" under the policy and, even if it did, coverage is precluded by several of the policy's exclusions. Nationwide further asserts that there is no coverage under the Auto Policy inasmuch as the underlying complaint does not allege bodily injury because of an auto accident and, even if it did, coverage is precluded by several of the policy's exclusions.

Belcher's sole argument is that coverage is afforded under the Homeowners Policy, Auto Policy, or both, because the underlying complaint includes negligence allegations, for which the policies afford coverage.  According to Belcher, the other counts in the underlying action not involving negligence "are not at issue in this motion, as Defendant's position is that coverage is afforded as a result of the negligence allegations." Belcher's Mem. Supp. at 1.

A.   <u>Homeowners Policy</u>

It is appropriate to begin by reciting the relevant provisions of the Homeowners Policy furnished by Nationwide

General Insurance Company to Belcher from February 1, 2021, to February 1, 2022 (No. 92 47 FR 028132).

The Homeowners Policy relevantly provides the following coverage:

> C.  Coverage E — Personal Liability
>
> If a claim is made or a suit is brought against an "insured" for damages due to an "occurrence" resulting from negligent personal acts or negligence arising out of the ownership, maintenance, or use of real or personal property, we will: . . .
>
>> 3.  Pay up to our limit of liability [being $300,000] for the damages for which an "insured" is legally liable . . . and
>>
>> 4.  Provide a defense at our expense by counsel of our choice . . . .
>
> D.  Coverage F — Medical Payments to Others
>
> We will pay the reasonable and necessary medical and funeral expenses that are "incurred" within three years from the date of an accident causing "bodily injury." . . . [T]his coverage applies only: . . . To a person off the "insured location," if the "bodily injury" . . . Is caused by the activities of an "insured." . . .

Homeowners Policy at 28 of 42, Compl. Ex. B, ECF No. 1-2.  The policy provides the following definitions of "occurrence" and "bodily injury":

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

11

> a.  "Bodily injury;" or
>
> b.  "Property damage."
>
> . . .
>
> "Bodily injury" means bodily harm, sickness
> or disease, including required care, loss of
> services and death that results.  "Bodily
> injury" does not include emotional distress,
> mental anguish, humiliation, mental distress
> or injury, or any similar injury unless the
> direct result of bodily harm.

Id. at 4, 6 of 42.

The Homeowners Policy also provides for medical payments to others, which applies, relevantly, "[t]o a person off the 'insured location,' if the 'bodily injury' . . . [i]s caused by the activities of an 'insured' . . . ."  Id. at 28 of 42.

The Homeowners Policy includes a number of coverage exclusions including, relevantly, exclusions for: "Motor Vehicle Liability," "Expected or Intended Injury," "Criminal Acts," "Sexual Molestation, Corporal Punishment, Physical or Mental Abuse, or Harassment," and punitive and exemplary damages.  Id. at 28-34 of 42.  These exclusions, but for the punitive and exemplary damages exclusion, apply to both personal liability coverage and medical payments.  Id.

The most notable of these exclusions is the "Expected or Intended Injury Exclusion," which excludes coverage for:

> "Bodily injury" or "property damage" which is
> expected or intended by an "insured," even if
> the resulting "bodily injury" or "property
> damage":
>
>> a. Is of a different kind, quality or
>> degree than initially expected or
>> intended; or
>>
>> b. Is sustained by a different person,
>> entity or property than initially
>> expected or intended.

Id. at 30 of 42.

1.   "Occurrence"

Nationwide asserts that the Homeowners Policy does not afford coverage for the allegations against Belcher in the underlying action because they do not constitute an "occurrence."  Pl.'s Mem. Supp. at 7.

The West Virginia Supreme Court of Appeals has determined that "[i]n an insurance liability policy, a claim based on sexual harassment does not come within the definition of 'occurrence,' which is defined as an 'accident, including continuous or repeated exposure to substantially the same general harmful conditions.'"  Syl. Pt. 2, Smith v. Animal Urgent Care, Inc., 542 S.E.2d 827 (W. Va. 2000).  Under the Nationwide Homeowners Policy and others like it, "an 'occurrence' must . . . exist before [the insurer] is obligated to provide indemnification."  Id. at 831.

The court has further held that "[t]he common and everyday meaning of 'accident' is a chance event or event arising from unknown causes." Stanley, 602 S.E.2d at 492. "'To be an 'accident,' both the means and the result must be unforeseen, involuntary, unexpected, and unusual.'" Id. (quoting Harrison Plumbing & Heating, Inc. v. N.H. Ins. Grp., 681 P.2d 875, 878 (Wash. App. 1984)).

In the underlying complaint, S.R. alleges that those defendants, including Belcher, drugged and kidnaped her and aided in the sexual assault and rape of S.R. by Miller. Belcher is alleged to have participated in these acts. The complaint describes a series of intentional, deliberate acts, and the negligence allegations are included as an alternative or additional theory of liability. Even the negligence count is couched in the language of intentional torts.

In Smith, the West Virginia Supreme Court of Appeals considered whether the insurer had a duty to defend or indemnify the insured against allegations of sexual harassment. 542 S.E.2d 827. The court concluded that "in an insurance liability policy, a claim based on sexual harassment does not come within the definition of 'occurrence.'" Id. at 832. Thus, the court found that the insurer was not bound to defend the insured against the allegations. Id.

14

In <u>Stanley</u>, the court considered whether there was insurance coverage where the underlying complaint was centered on allegations that the insured sexually assaulted two minor relatives. 602 S.E.2d 483. The court determined that, where "[t]he crux of the complaint is . . . deliberate[] sexual assault . . . [s]uch a deliberate act is not covered by the subject policy because it does not constitute an 'accident.'" <u>Id.</u> at 492. The court also considered the additional allegations of the intentional tort of outrage, civil conspiracy, and civil assault, and found that "[t]hese too are deliberate acts which do not fall within the meaning of the term 'accident.'" <u>Id.</u>

As in <u>Smith</u> and <u>Stanley</u>, the underling complaint here alleges harm arising from the intentional and deliberate acts of the defendants. Even the gist of the negligence claim in Count II is grounded on actual malice and a conscious, reckless, and outrageous indifference to the safety of the victim, S.R. Compl. at ¶ 36, Civ. No. 23-C-560. The intentional acts alleged in the underlying complaint do not constitute an "accident" as the lay person would understand it, nor as the West Virginia Supreme Court of Appeals has defined it. Thus, by the bare terms of the policy, which covers bodily injury as the result of an occurrence (meaning an accident), Nationwide has no duty to

defend or indemnify Belcher against the conduct charged in the underlying action.

    2.   <u>Expected or Intended Injury Exclusion</u>

        Belcher argues that regardless of the allegations of intentional wrongdoing, Nationwide is bound to defend and indemnify him because the complaint also alleges negligence. Belcher's Mem. Supp. at 1.  The five following negligent acts are included in the allegations against Belcher: (1) negligently utilizing and operating a vehicle, (2) negligently failing to intervene, (3) negligently failing to render aid, (4) negligently failing to contact law enforcement, and (5) negligently failing to obtain medical care.  <u>See</u> <u>id.</u>  According to Belcher, "[t]he 'plain language as written' standard set by our Courts shows that this policy extends coverage for negligent acts of the insured that happen away from the residence."  <u>Id.</u> at 3 (quoting <u>Uncork & Create LLC v. Cincinnati Ins. Co.</u>, 27 F.4th 926, 931 (4th Cir. 2022)).  Thus, Belcher argues, Nationwide must provide a defense because, regardless of the nature of any other allegations, the underlying complaint contains allegations of negligence.

        The case law, however, is clear: "The inclusion of negligence-type allegations in a complaint that is at its essence a sexual harassment claim will not prevent the operation

16

of an 'intentional acts' exclusion contained in an insurance
liability policy which is defined as excluding 'bodily injury'
'expected or intended from the standpoint of the insured.'"
Syl. Pt. 4, Smith, 542 S.E.2d 827.

In Smith, when the insured argued that the inclusion
of a negligence allegation circumvented the "intentional acts"
exclusion, the court cited myriad cases in rejecting this
defense.  Id. at 833–34 (citing West Virginia state and federal
cases, as well as decisions from the Ninth Circuit Court of
Appeals, Maryland Court of Appeals, and New York Court of
Appeals).  According to the court, "the inclusion of a
negligence-oriented theory of recovery . . . does not alter the
essence of the claim for purposes of determining the
availability of insurance coverage."  Id. at 832 (citing GATX
Leasing Corp. v. Nat'l Union Fire Ins. Co., 64 F.3d 1112, 1118
(7th Cir. 1995)).

In Stanley, where the complaint alleged years of
sexual abuse, the court concluded there was no insurance
coverage "due to the nature of the allegations."  602 S.E.2d at
494.  Reviewing the underlying complaint, the court found it
"clear that the gravamen of [the] complaint" was intentional
sexual abuse and exploitation, and that the defendant was
alleged to have "intended, or at least expected, bodily injury

17

to result." Id. at 496.  The court concluded "that any alleged negligent acts . . . [were] precluded by the intentional acts exclusion."  Id.[1]

In Horace Mann Insurance v. Leeber, 376 S.E.2d 581 (W. Va. 1988) the court held that "[t]here is neither a duty to defend an insured in an action for, nor a duty to pay for, damages allegedly caused by the sexual misconduct of an insured, when the liability insurance policy contains a so-called 'intentional injury' exclusion."  Syl., in part, 376 S.E.2d 581. In that case, the underlying complaint alleged that Leeber, a teacher, sexually abused a student, and included claims of intentional and negligent conduct; the insurer sought a declaratory judgment that it did not have an obligation to defend in light of the intentional injury exclusion in the subject insurance policy.[2]  Id. at 582–83, 587.  The court determined that "the allegations of 'negligence' in the complaint [were] 'a transparent attempt to trigger insurance

---

[1] The final count of the underlying complaint in Stanley alleged loss of services, comfort, and society, which the court found to be "a derivative claim that fails along with the primary claims in the complaint," noting that "'[i]t is inherent in the nature of a derivative claim that the scope of the claim is defined by the injury done to the principal.'"  Id. at 497 (quoting Jacoby v. Brinckerhoff, 735 A.2d 347, 351 (Conn. 1999)).

[2] The exclusion in that policy read: "This policy does not apply to liability . . . caused intentionally by or at the direction of an insured."  Id. at 583.

coverage by characterizing allegations of [intentional] tortious conduct under the guise of 'negligent' activity." Id. at 587. The court, finding that the underlying complaint sought to recover for "alleged intentional acts committed," determined that there was no duty to defend. Id. (citing Linebaugh v. Berdish, 376 N.W.2d 400, 406 (Mich. App. 1985)) (alteration in original).

For Belcher's assertion that Nationwide must defend him due to the inclusion of negligence allegations in the underlying complaint, in the face of this overwhelming case law, Belcher cites only to Uncork & Create LLC v. Cincinnati Insurance Co., 27 F.4th 926 (4th Cir. 2022), and Baker v. American Insurance Company of Newark, New Jersey, 324 F.2d 748 (4th Cir. 1963). Uncork & Create involves insurance coverage for lost business during the Covid-19 pandemic and does not address intentional injury exclusions or negligence allegations; it merely stands for the general principle that a court applies a "plain language" reading of an insurance policy. See 27 F.4th at 928, 931 n. 6. In Baker, the underlying event was the clearing of a tract of land to construct a shopping center and allegations that water run off caused damage to surrounding properties. 324 F.2d at 750. The court in Baker, applying South Carolina law, determined the negligence and nuisance allegations in the underlying complaint constituted an

"accident" under the terms of the insurance policy. Id. at 750–51.

Both Uncork & Create and Baker are easily distinguishable from the current action. Neither address intentional injury exclusions, the underlying events are utterly unlike those in the present action, and Baker applies the law of another state. Meanwhile, there is a plethora of West Virginia caselaw declaring that negligence allegations inserted into a claim that is fundamentally about an intentional act, such as sexual assault or battery, do not defeat an intentional injury exclusion or otherwise create insurance coverage where none exists.

Belcher's position that the negligence allegations in the underlying complaint afford coverage is untenable. West Virginia caselaw is clear that in a case premised on allegations of sexual assault and the fundamentally deliberate and intentional actions of one or several defendants, the inclusion of negligence allegations is insufficient to sidestep an intentional injury exclusion and create coverage where it does not exist. This is precisely what Belcher attempts to do; it is clearly proscribed by the West Virginia Supreme Court of Appeals. Furthermore, even were Belcher to be successful in this regard, he would still have to overcome the various other

policy exclusions pointed to by Nationwide, including the

"Criminal Acts" exclusion and the "Sexual Molestation, Corporal

Punishment, Physical or Mental Abuse, or Harassment" exclusion.

See Homeowners Policy at 30–31 of 42.  In sum, Nationwide has no

duty to defend or indemnify Belcher in the underlying action per

the terms of the Homeowners Policy for either the personal

liability or medical payments to others coverage in the

Homeowners Policy.

B.    Auto Policy

        Next, Belcher asserts that Nationwide has a duty to

defend and indemnify him in the underlying action under the

terms of the Auto Policy.  The Auto Policy, furnished by

Nationwide Insurance Company of America and insuring Belcher

from February 1, 2021, to August 1, 2021, provides, relevantly,

bodily injury liability coverage of up to $100,000 per person or

$300,000 per occurrence and medical payments of up to $1,000 per

person.  Auto Policy, Policy Declarations at 2–3 of 4, Compl.

Ex. C, ECF No. 1-3.  The Auto Policy provides that Nationwide

will, in part,

> pay damages for "bodily injury" or "property
> damage" for which any "insured" becomes
> legally responsible because of an auto
> accident. . . . We have no duty to defend any
> suit . . . for "bodily injury" or "property
> damage" not covered under this policy.

Auto Policy at 5–6 of 27.  The policy defines the "insured,"
<u>inter</u> <u>alia</u>, as "[y]ou or any 'family member' for the ownership,
maintenance or use of any auto or 'trailer,'" and "[a]ny person
using 'your covered auto.'"  <u>Id.</u> at 6 of 27.   The policy
defines "bodily injury" as:

> mean[ing] bodily harm, sickness or disease,
> including death that results.  "Bodily injury"
> does not include emotional distress, mental
> anguish, humiliation, mental distress or
> injury, or any similar injury unless the
> direct result of bodily harm.

<u>Id.</u> at 3 of 27.  While the policy does not define "auto
accident," it is apparent that the events at issue in the
underlying case are not the result of an "accident" as a
layperson would understand that term to mean.

Medical payments are only available under the Auto
Policy for a bodily injury caused by an auto accident and
sustained by an insured.  <u>Id.</u> at 10 of 27.  As the events at
issue were not an accident and S.R., who allegedly sustained the
injuries, is not an insured under this policy, the medical
payment liability is inapplicable.

The policy contains the following expected or
intended injury exclusion:

> We do not provide Liability Coverage for any
> "insured":
>
> 1.  For "bodily injury" or "property damage"
> which is expected or intended by an "insured"

> even if the resulting "bodily injury" or
> "property damage":
>
>> a. Is of a different kind, quality or
>> degree than initially expected or
>> intended; or
>>
>> b. Is sustained by a different person,
>> entity, real or personal property than
>> initially expected or intended.

Id. at 6 of 27. The policy also excludes coverage for punitive and exemplary damages. Auto Policy at 9 of 27.

Belcher argues that Nationwide has a duty to defend or indemnify him under the Auto Policy because the underlying complaint alleges that S.R. was injured from the negligent utilization or operation of a vehicle. Belcher's Mem. Supp. at 3. Belcher says these allegations effectively allege an automobile accident covered by the policy. Id.

As noted, the Auto Policy does not define "auto accident." In auto policies where the term "accident" is defined "to include 'bodily injury or property damage the insured neither expected or intended,'" the West Virginia Supreme Court of Appeals has found that such language "is designed to exclude coverage for an intentional tort such as sexual assault." Syl. Pt. 2, Dotts v. Taressa J.A., 390 S.E.2d 568 (W. Va. 1990).

In Dotts, the Supreme Court considered whether sexual assault by a bus driver of underage passengers was covered under

23

the auto policy, which covered damages "'caused by an accident and resulting from the ownership, maintenance or use of a covered auto.'"  <u>Id.</u> at 570.  The policy in <u>Dotts</u> defined "accident" as "'continuous or repeated exposure to the same conditions resulting in bodily injury or property damage the insured neither expected or intended.'"  <u>Id.</u>  The court concluded that the policy language defining "accident" excluded coverage for sexual assault and other similar intentional torts. <u>Id.</u> at 570–71.

In defining the "insured," Belcher's Nationwide Auto Policy notes that the term covers "the ownership, maintenance or use of any auto."  The West Virginia Supreme Court of Appeals has noted that the phrase, "arising out of the ownership, maintenance, or use of any auto," "is not a restrictive one." <u>Dotts</u>, 390 S.E.2d at 574.[3]  While the phrase "has been given a broad interpretation," <u>Baber v. Fortner ex rel. Poe</u>, 412 S.E.2d 814, 817 (W. Va. 1991), "[i]n assault cases, courts have tended to find . . . [that] the assault-caused injuries [did not arise

---

[3] <u>Dotts</u> examined whether the assault arose out of the "ownership, maintenance, or use" of the insured vehicle, but much of this discussion is not applicable because, in <u>Dotts</u>, the bus company was a common carrier and thus "owe[d] to its passengers the duty to use the highest degree of care to transport" its passengers. <u>Id.</u> at 574–75.  While this elevated duty makes the <u>Dotts</u> discussion of "ownership, maintenance, or use" distinguishable from the current action, that same phrase is addressed in the discussion that follows herein.

from] the use of an insured motor vehicle," <u>Allstate Prop. &</u>
<u>Cas. Ins. Co. v. Brady</u>, No. 1:15CV150, 2016 WL 4250360, at *2
(N.D.W. Va. Aug. 10, 2016) (citing <u>Baber</u>, 412 S.E.2d at 817–18).

        "'[W]hether or not an injury arose from the "use" of a
motor vehicle depends upon the factual context of each case.'"
Syl. Pt. 1, <u>Cleaver v. Big Arm Bar & Grill, Inc.</u>, 502 S.E.2d 438
(W. Va. 1998) (quoting Syl. Pt. 5, in part, <u>Adkins v. Meador</u>,
494 S.E.2d 915 (W. Va. 1997)).  In interpreting the phrase
"arising from the ownership, maintenance, or use of an auto,"
the West Virginia Supreme Court of Appeals quoted the Michigan
Court of Appeals' decision in <u>Detroit Automobile Inter-Insurance</u>
<u>Exchange v. Higginbotham</u>, 290 N.W.2d 414 (Mich. App. 1980):

> Cases construing the phrase "arising out of
> the . . . use of a motor vehicle" uniformly
> require that the injured person establish a
> causal connection between the use of the motor
> vehicle and the injury.  (Citation omitted).
> <u>Such causal connection must be more than</u>
> <u>incidental, fortuitous or but for.  The injury</u>
> <u>must be foreseeably identifiable with the</u>
> <u>normal use of the vehicle.</u>  (Citations
> omitted.)  (Emphasis added.)

<u>Baber</u>, 412 S.E.2d at 417 (quoting <u>Detroit Auto.</u>, 290 N.W.2d at
419); <u>see also</u> <u>Cleaver</u>, 502 S.E.2d at 442; <u>Brady</u>, 2016 WL
4250360, at *2.

        In <u>Baber</u>, the court considered whether an "intentional
shooting which occur[red] from within the cab of a stationary
pickup truck" arose out of the ownership, maintenance,

operation, or use of the vehicle.  Syl. Pt. 1, 412 S.E.2d 814.
The court concluded that it did not because the shooting "was
not 'foreseeably identifiable with the normal use of the
vehicle."  Id. at 819.  The court found that the shooting was
not attributable to the use of the truck, remarking that "[t]he
vehicle functioned merely as the situs of a shooting which could
easily have occurred elsewhere, given the circumstances."  Id.
The court ultimately held that "an intentional shooting which
occurs from within the cab of a stationary pickup truck is not
an act arising out of the ownership, maintenance, or use of the
vehicle."  Id.

        The court in Brady, applying Baber, considered whether
the auto policy provided coverage where a person shot two
people, one from within the cab of his truck, and where he had
used the truck to travel between the locations where he shot
each person.  Brady, 2016 WL 4250360, at *1.  Unlike in Baber,
where the truck was stationary, in Brady, the truck was
allegedly in motion when one of the victims was shot.  Id. at
*3.  The court determined there was an insufficient causal
connection between driving the truck and the shootings, holding
that the shooting that occurred while the vehicle was in motion
was "not more foreseeably identifiable with the normal use of a
vehicle merely because of the vehicle's movement."  Id. (citing
Baber, 412 S.E.2d at 819).

Other jurisdictions have considered whether a sexual assault that occurred in a vehicle arose from the ownership, use, or maintenance of the vehicle and have generally concluded that it did not, and thus that it did not trigger coverage under the auto policy.  See <u>Doe v. State Farm Fire & Cas. Co.</u>, 878 F. Supp. 862 (E.D. Va. 1995); <u>State Farm Mut. Auto. Ins. Co. v. Kastner</u>, 77 P.3d 1256 (Colo. 2003).

In <u>Doe v. State Farm</u>, a woman was "abducted in a stolen vehicle, transported to an isolated location, and sexually assaulted within the automobile," not dissimilar to the allegations underlying the present action.  See 878 F. Supp. at 862.  The court, applying Virginia law, found that the circumstances did not arise out of the ownership, maintenance, or use of the vehicle, because, although there was some causal connection between the woman's injuries and the car, those injuries did not arise "from the use of the car <u>as a car</u>, i.e. as a means of transportation, but from the use of the car as an enclosure or situs for the commission of criminal acts."  <u>Id.</u> at 865 (emphasis in original).

In <u>Kastner</u>, the court considered whether the injury — kidnapping and taking the woman in her own car to a remote location where she was sexually assaulted within the vehicle — arose from the operation, maintenance, or use of the vehicle.

27

77 P.3d at 1258.  In that case, some features of the car were used to effectuate the kidnapping: the assailant used the reclining seat to prevent the woman from signaling for help, used the vehicle to get to an isolated area to commit the crime, and used the automatic seatbelts as restraints.  Id. at 1265. The court nonetheless determined that the kidnapping and assault did not arise from the use of the vehicle because none of these actions were a foreseeable or ordinary use of the vehicle for its inherent purpose and there was no "causal nexus between a covered 'use' of the vehicle and the victim's injuries."  Id. at 1266.

Other jurisdictions have come to similar conclusions. See Crespin v. Safeco Ins. Co. of Am., 429 P.3d 968 (N.M. App. 2018) (concluding that although vehicle was a necessary part of plan to sexually assault victim, it was only a means of transport and was not an integral element of the assault itself); Edwards v. State Farm Mut. Auto. Ins. Co., 399 N.W.2d 95 (Minn. Ct. App. 1986) (concluding use of vehicle to abduct woman and sexual assault and murder of woman in vehicle did not arise from "use" of the vehicle, as offenses did not "require[] the use of an automobile or involve[] risks associated with motoring"); Doe v. S.C. State Budget & Control Bd., 494 S.E.2d 469 (S.C. Ct. App. 1997), aff'd 523 S.E.2d 457 (S.C. 1999) (concluding sexual abuse of two women by police officer in

28

patrol vehicle did not arise from the use of the vehicle as
"[t]he situs of an injury is not necessarily a causal link, even
though it is connected spatially to the harm"); State Farm Mut.
Auto. Ins. Co. v. Myers, 728 S.E.2d 787 (Ga. App. 2012)
(concluding sexual battery occurring in back seat of car did not
arise from the use of the vehicle).

        In this case, the injuries alleged by S.R. were not
the result of an accident, and, more particularly, did not arise
from the operation, maintenance, or use of the automobile.
According to the underlying complaint, the injuries suffered by
S.R. were a result of her being drugged and sexually assaulted,
which goes beyond mere negligence.  These injuries were caused
by the alleged malicious intent of the defendants in the
underlying case, not from the use of the vehicle.  The vehicle
may have been the situs of the sexual assault, but it was not
the cause of the assault, and the injury was not foreseeably
identifiable with the ordinary use of the vehicle.

        Thus, the alleged injury to S.R. is not covered under
the terms of the Auto Policy and Nationwide does not have a duty
thereunder to defend or indemnify Belcher in the underlying
litigation.  Additionally, the West Virginia Motor Vehicle
Safety Responsibility Law's minimum coverage is not implicated
because the injury alleged does not fall within the scope of the

coverage, as it was not an accident and, in any event, did not arise from the use, ownership, or maintenance of the vehicle. If the injury had arisen out of the ownership, maintenance, or use of the vehicle and was excepted under a policy exclusion, the minimum coverage would be implicated; since it is not within the scope of the policy whatsoever, the minimum coverage is not implicated.

<u>IV. CONCLUSION</u>

The court finds that Nationwide has no duty to defend or indemnify Belcher under either the Homeowners Policy or the Auto Policy.  Accordingly, it is ORDERED that:

1. Defendant Teddy D. Belcher, Jr.'s Motion for Summary Judgement (ECF No. 15) be, and it hereby is, DENIED;

2. Plaintiffs Nationwide General Insurance Company and Nationwide Insurance Company of America's Motion for Summary Judgement against Belcher and S.R. (ECF No. 17) be, and it hereby is, GRANTED; and

3. The court DECLARES that (1) the Homeowners Policy, No. 92 47 FR 028132, furnished by Nationwide General Insurance to Belcher from February 1, 2021, to February 1, 2022, does not provide coverage for the defense or indemnification of Belcher or medical

payment coverage for the claims asserted against him in <u>S.R. v. Michael Miller, West Virginia State Police, The Front Room, LLC a/k/a Pappy's Bar and Grille, West Virginia Department of Homeland Security f/k/a West Virginia Department of Military Affairs and Public Safety, T.J. Belcher, and Cody Baisden</u>, Civil Action No. 23-C-560, pending before the Circuit Court of Kanawha County; and (2) the Auto Policy, No. A 4500 07 16, furnished by Nationwide Insurance Company of America to Belcher from February 1, 2021, to August 1, 2021, does not provide coverage for the defense or indemnification of Belcher for the claims asserted against him in <u>S.R. v. Miller et al.</u>, Civil Action No. 23-C-560.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: May 24, 2024

John T. Copenhaver, Jr.
Senior United States District Judge